Wickhem, J.
 

 {dissenting).
 
 I agree that the Wisconsin board had jurisdiction of the labor dispute for substantially the reasons set forth in the majority opinión. My disagreement is, therefore, limited to the proposition that the contract as a whole is in violation of sec. 111.06 (1) (c), Wis. Stats. On this point, I note two questions which, in my judgment, may be the subject of reasonable debate, but which I deem it unnecessary to deal with and prefer to leave for future consideration. The first is whether, when the employer and the employees are all represented in a negotiátion, it is permissible in a collective agreement, except as specifically forbidden by the act, to include as conditions to employment maintenance of union membership, securing of work permits, or the like, the sum total of which falls short of an all-union contract. The argument in favor of the validity of such an agreement is that, except for the all-union contract, sec. 111.06 (1) (c), does not specifically limit the subject matter of collective bargaining where the bargainers represent the employer and all of the
 
 *447
 
 employees. The principal argument against it is that such agreements are literally within the description of unfair labor practices in that they tend to encourage or discourage union membership by discrimination as to tenure of employment.
 

 The second question is whether an agreement such as is involved here is valid, provided a vote of three fourths of the members of the bargaining unit is first obtained. The argument in support of this is that the legislature, having provided a method for validating the most far-reaching and discriminative contract, namely, the áll-union contract, must have intended that a contract falling short in point of discrimination was subject to validation by a vote equal to that supporting an all-union contract. This question is, of course, not before us, because there was no vote in this case, and if the majority opinion is right there is no way of saving this contract. The first question would have to be met in this case if the complainants had been discharged for failing to maintain membership in the union because, except for a favorable answer to this question, the maintenance-of-membership clause cléarly encourages and, indeed, coerces membership- in the union as a condition of continued employment. In this connection, however, see 21 North Carolina Law Review, where there are listed on pages 152 to 156, 170 to 190, 207 to .211, proceedings in which “maintenance-of-membership” clauses and on pages 160,-161, 196 to 198, proceedings in which “encouragement-of-membership” clauses were recommended or tolerated in agreements considered by either the National Defense Mediation Board or the War Labor Board under provisions of the Federal Labor Act substantially similar to sec. 111.06 (1) (c), Wis. Stats. However, the complainants in this case were discharged for failure to obtain work permits, and upon the record in this case I am of the view that no unfair labor practice was committed.
 

 
 *448
 
 Three questions are here involved: (1) Is a requirement that the nonunion employees either join the union which constitutes the bargaining agent or obtain a work permit from it a violation of sec. 111.06 (1) (c), Wis. Stats., as a matter of law? (2) Are there facts in this record, apart from the agreement itself, which will support a finding that this agreement actually so operates ? ( 3 ) Assuming a negative answer to the foregoing two questions, is the provision concerning work permits separable from the rest of the contract in such a way that it is proper to appraise its validity and that of the acts done in execution of it without reference to the balance of the contract ?
 

 The first two questions, I am satisfied, must receive a negative answer. It is my view that standing alone, an agreement that employees either join the bargaining union or pay to the union a permit fee is not within the prohibition of sec. 111.06 (1) (c), Wis. Stats. I think this is true for the reason that so far as the contract itself indicates, the employee is presented with a reasonable alternative to joining the union. It is, of course, true that if the contract describes in detail the conditions of a work permit, and if those conditions are so onerous as to lead to the conclusion that the permit is a mere coercive device or amounts to a practical requirement of union membership, a different inference may be drawn even upon the words of the agreement. If the agreement, however, requires a permit fee in an amount that does not appear to be more than a reasonable contribution by a nonunion member to the bargaining expenses of his own duly certified agent, an investigation into the facts would have to be made before an unfair labor practice is discovered. It may well be that in cases where the contract merely provides for the obtaining of a permit, an investigation into the facts will show that the fee actually exacted is so exorbitant or other conditions of the permit so onerous as to present the employee with no real alternative, in which case any act done to carry this agreement
 
 *449
 
 into enforcement would fall within the condemnation of the statute. In such a case, the burden is on the party asserting an unfair labor practice to establish this. In this case, I am satisfied that a fee one and one-half times the union dues cannot be so condemned, merely upon its face, since the permit-tee is not subject to union assessments or other burdens incident to union membership, and it is not shown that such a contribution constitutes an inequitable share of the expenses of a bargaining agent.
 

 This being true, we approach the third question. On this point I am of the view that the clause concerning work permits is separable from other parts of the collective-bargaining contract. The law is concerned with unfair labor practices. It does not mention, and has no concern with agreements between capital and labor, except as they culminate in discriminatory action based upon union membership or nonmember-ship. Here, the only persons who have been dismissed have been dismissed for failure to get a work permit. I think that only that clause of the contract is before us, and not the contract as a whole, and this clause being unobjectionable in my view, I conclude that the judgment of the trial court should be affirmed. ■
 

 I am authorized to state that Mr. Justice FRITZ concurs in this opinion. '